ST. MARY'S COUNTY GRIEVANCE REVIEW BOARD

BARBARA ANNETTE SMITH　　　　＊
　　　　　Grievant
vs.　　　　　　　　　　　　　　＊

COMMISSIONERS OF ST. MARY'S　＊
COUNTY, MARYLAND
　　　　　　　　　　　　　　　＊
　　　　　Employer
　　　　　　　　　　　　　　　＊

　　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊

**DECISION**

I. Procedural History

　　Barbara Annette Smith ("Grievant") is a former employee of the Commissioners of St. Mary's County, Maryland ("Employer"). She was suspended with pay from her employment as a Senior Legal Assistant with the St. Mary's County Office of the State's Attorney ("OSA") effective July 15, 2019, pending an investigation into the alleged leaking of confidential information from the OSA. Upon completion of the investigation, the Grievant was terminated from employment effective October 16, 2019 for various violations of the St. Mary's County Manual of Personnel Policies and Procedures ("Personnel Manual") and the St. Mary's County IT Use and Security policy ("IT Policy"). The Grievant filed an informal grievance on October 25, 2019 contesting the termination, which was denied by State's Attorney Richard D. Fritz on October 30, 2019. The Grievant, through counsel, Thomas J. Gagliardo, Esq., appealed the denial of the informal grievance to the Director of Human Resources on November 14, 2019. The appeal was denied by the Director of Human Resources on December 2, 2019. The Grievant, *pro se*, filed an undated request to the Director of Human Resources that a grievance review board be appointed to consider her appeal, which was received by the Employer on December 11, 2019.

　　The Employer, acting through the County Administrator, appointed a Grievance Review Board ("Board") consisting of five (5) employees of St. Mary's County Government to hear the Grievant's appeal from her termination, which held two days of hearings on September 2 and 3, 2020. The Grievant was represented throughout the hearing by Thomas J. Gagliardo, Esq., and the Employer was represented by Neil A. Murphy, Esq., Deputy County Attorney. At the conclusion of both parties' presentation of their case, and testimony from the parties' witnesses, who testified under oath, counsel for the Grievant made an oral motion to dismiss the termination

and reinstate the Grievant to her previous position, based on a lack of proper notice of the allegations against her, resulting in a denial of due process. At the conclusion of arguments from the parties for and against the motion to dismiss, the Board Chair took the motion under advisement. Through counsel the Grievant subsequently submitted a written motion requesting the Board to consider a Memorandum in Support of her Claim. For reasons more fully explained below, both of these motions will be denied.

II. Factual Summary

The Grievant was employed by the OSA as a Senior Legal Assistant in the District Court division and has worked for the OSA since 2012. The duties of her position require that she have access to certain confidential criminal case files in the Optiview computer database maintained by the St. Mary's County Sheriff's Department. The Optiview database contains public documents, such as charging documents and arrest warrants, and non-public criminal investigatory information, such as photographs, investigative interviews and incident reports. The Grievant's need for access to criminal files in the database would be limited to those case files that had been specifically assigned to her.

On May 28, 2019 an arrest warrant was issued by the District Court of Maryland for St. Mary's County for Alexander Leah Murphy ("Murphy"). The arrest warrant was issued following a Statement of Charges filed in the District Court alleging that Murphy had committed first and second degree assaults against three (3) different victims arising out of an incident on May 4, 2019 in the vicinity of Quade's Store in Bushwood, Maryland. The Statement of Charges was supported by a detailed Application for Statement of Charges filed by Detective Edward Vogt with the Sheriff's Department. The Grievant was not involved in the Murphy case and had no legitimate reason to access the Optiview files in that case as part of her employment duties.

On May 31, 2019 the Grievant worked her regular hours at the OSA from 7:30 a.m. to 4:30 p.m. Like other employees, she is provided with a one-half hour lunch break, which she usually took at the desk in her office at the State's Attorney offices. The Optimax database is supported by the St. Mary's County Department of Information Technology ("IT"). In this role, IT has the ability to create printed logs showing which criminal cases have been accessed, the specific documents related to those cases that have been viewed, the dates and times each document has been accessed, and the identity of the employee whose computer work station, identity and password were used for such access. Logs provided by IT disclose that the Grievant's computer work station in her office, personal identification and password were used to access each of the documents in the Optiview database pertaining to the criminal charges against Murphy on May 31, 2019, beginning at 1:17 pm and ending at 1:58 pm.

Exhibit I

On Friday, July 12, 2019 Jaymi Sterling, Senior Assistant State's Attorney and Chief of Staff ("Sterling"), sent an e-mail to the Grievant asking to meet with her that day at 3 p.m. at the State's Attorney's Office at the Court House in Leonardtown. The Grievant responded with an e-mail to Sterling at 2:33 p.m. that day, stating she would be unable to meet that afternoon because her aunt had just died, and was also in the process of moving out of her house. Sterling sent another e-mail at 2:34 p.m. asking the Grievant to come to her office "right now". The Grievant did not attend the meeting that day, and the meeting was held on Monday, July 15, 2019 at which the Grievant, Sterling and Buffy Giddens, District Court Chief for the OSA ("Giddens"), were present. At this meeting, the Grievant was asked if she had accessed the Murphy file in the Optiview database, and she denied having done so. At the conclusion of the meeting Sterling informed the Grievant in writing that she was being suspended with pay effective on that day, pending the conclusion of a personnel investigation concerning allegations of confidential information being leaked from the OSA.

Following the suspension on July 15, 2019 the Sheriff's Department conducted an investigation into the leak of confidential information from the Murphy file to determine who had access to the material, and who might have improperly leaked it. The investigation concluded that (1) the Grievant had accessed the information from the desktop computer in her office at the OSA, (2) the Grievant denied either accessing or leaking the information, and (3) an individual other than the Grievant had actually leaked the confidential information.

According to the termination letter sent to the Grievant on October 7, 2019, the Grievant was terminated effective October 16, 2019 for (1) insubordination to a supervisor for refusing to meet with Sterling on July 12, 2019, (2) accessing the Murphy file without a business reason or necessity, (3) denying that she had accessed the file, (4) losing her access to the criminal database maintained by the Sheriff's Department and, as a result, being unable to perform her duties with the OSA, and (5) violation of the IT Policy for posting her network name and password on the computer in her office.

III. Summary of Testimony

The following individuals provided testimony under oath during the hearing on September 2 and 3, 2019:

A. Robbie Merritt, a Sargeant with the St. Mary's County Sheriff's Department ("Sgt. Merritt"), conducted an investigation into the alleged leaks of confidential information related to the Murphy case. As part of his investigation, Sgt. Murphy interviewed the Grievant at her home on July 24, 2019, and she denied accessing the documents related to the Murphy case that were available on the Optiview database. The Grievant also denied to Sgt. Merritt that she had ever leaked any information about the Murphy case. Sgt. Merritt determined that the Grievant had

3

Exhibit I

worked on May 31, 2019 and had accessed the Murphy case documents on the Optiview database without a work-related justification. Sgt. Merritt also testified that a separate investigation conducted by the Sheriff's Department had concluded that someone other than the Grievant had been the source of the alleged leak of confidential information related to the Murphy case. Sgt. Merritt testified that he had recorded an interview with Murphy, who acknowledged during the interview that he knew Page Miller ("Miller"), a former employee of the OSA working in the Circuit Court division. Sgt. Merritt testified that he did not interview Miller to ask her where she was on May 31, 2019, or whether she had accessed the Murphy case information, but found no evidence that Miller had been in the Grievant's office that day to access the Murphy case information on her computer.

Sgt. Merritt testified later in the hearing that county employees having access to the Optiview database are prohibited from sharing their computer username and password with anyone else. It would be a violation of county policy to tape that information to a desktop computer where others might see it. Sgt. Merritt reviewed computer records of everyone who accessed the Murphy case file. From this review, Sgt. Merritt concluded that the Grievant had accessed the file from the desktop computer in her office, and with the exception of the Grievant, everyone who had accessed the file had a valid business-related reason to do so. Anyone accessing the Murphy case file would have needed a specific case number available only to law enforcement personnel, including employees of the OSA, since the Optiview database cannot be accessed under the defendant's name. The case number used to access the file on the Optiview database is contained in the arrest warrant, but is not available publically until the warrant is served. In this case, the warrant was not served on Murphy until June 12, 2019 in North Carolina. Sgt. Merritt also testified that he did not believe anyone else had "set up" the Grievant or accessed the Murphy case file from the Grievant's computer in her office.

The Grievant testified to the Board that she had never accessed the Murphy case documents in the Optiview database, and that she had never learned of the charges against Murphy or seen the warrant issued for Murphy's arrest until her July 15, 2019 meeting with Sterling and Giddens at the State's Attorney's office. The Grievant also testified that she had denied accessing the Murphy case files during her interview with Sgt. Merritt on July 24, 2019, and told him that she had no reason to access them. She also testified that she had not leaked any of the documents in the Murphy case.

The Grievant testified that she had attempted to put off the meeting on July 12, 2019 with Sterling because her aunt had recently died, and she was busy trying to sell her house. She also testified that she suspected the subject of the meeting might involve a reassignment and demotion. This was confirmed by the testimony of Michael Kane, an Assistant State's Attorney with whom she had worked for at least six years. The Grievant denied any intention of being

4

Exhibit I

insubordinate in leaving work on July 12, 2019 without attending the meeting requested by Sterling.

The Grievant's son, Jay Hall ("Hall"), testified that he had conducted a search on social media, specifically Facebook, for relationships between the participants in the Quade's Store incident, and had found connections between Miller and Murphy, as well as between Miller and other participants involved in the incident.

Tina Frantantuano ("Frantantuano") testified that she had worked with the Grievant in the OSA. Her opinion was that the Grievant was a hard-working employee with integrity. She testified that four or more employees at the OSA shared passwords, and was unaware of anyone being disciplined for it. She offered her opinion that she would be happy to work again with the Grievant. Frantantuano was on leave and not working in the office on May 31, 2019. She believed that the Grievant should not have been terminated from employment and would like to see her return to work. Frantantuano testified that other employees in the OSA might be jealous of the Grievant and her hard work.

Donna Rison ("Rison") testified that she had worked with the Grievant at the OSA for five years. She was well-liked and knowledgeable, with a reputation for honesty and integrity, and detail-oriented. Rison testified that she would be comfortable working with the Grievant again, and thought that her termination was unwarranted.

Amie Island testified that she had been a co-worker with the Grievant at the OSA, and had a reputation for honesty and integrity.

Michael Kane ("Kane") testified that he had worked as an Assistant State's Attorney in the OSA since 2006, and worked in the District Court division with the Grievant in her capacity as the Bad Check Coordinator. Based on his experience, he stated that the Grievant was an excellent performer, with a reputation for honesty, loyalty and integrity. He testified that the Grievant showed him the July 12, 2019 e-mail she had received from Sterling requesting a meeting, and that he helped her edit a reply e-mail. Kane confirmed the Grievant's testimony that she thought the purpose of the meeting might be a demotion, and that her aunt had recently died and this had upset her. He further testified that he had never heard the Grievant previously express fears of a demotion. When Kane learned of the Grievant's suspension following her July 15, 2019 meeting with Sterling and Giddens, he recommended she retain the services of Daniel F. Slade, Esq. to represent her in the personnel action. Kane testified that he still has confidence in the Grievant's honesty, integrity and loyalty.

Daniel F. Slade ("Slade") testified he has known the Grievant since 2000. She is a wonderful person, with the highest integrity, and very loyal. He stated he has never represented

Exhibit I

her as an attorney. He does not believe the allegations against her, and the allegations against her are a "rush to judgment". Slade testified he is not employed at the OSA and has no direct knowledge of the Grievant's actions in this case.

Page Miller testified that she has not physically been in the offices of the OSA since she left employment there in 2017. She worked with the Grievant for approximately one year before the Grievant was assigned to the District Court division. She denied ever having accessed the Murphy case file online. She acknowledged being friends on Facebook with Murphy and other participants in the Quade Store incident.

Mark Stancliff ("Stancliff") testified that he had worked in the St. Mary's County Department of Information Technology for twenty years. Stancliff conducted an investigation of this case, and determined that the Grievant's computer in her office was used to access the Murphy case file on May 31, 2019. The IP address for that specific computer was activated and working on that date. He reviewed data access logs for May 31, 2019 which showed that the Grievant's computer was used to access the Murphy case file documents using her identification and password. He testified that he had no doubt that the Grievant had accessed the records, and believes it is an "extremely remote possibility" anyone else could have done it.

Buffy Giddens testified that she had been employed at the OSA for nine years as an Assistant State's Attorney, and during that time had worked with the Grievant. The Grievant was a good employee, who was well liked. The Grievant had her own office, where she usually kept the door open, and usually ate lunch there. Giddens testified that it was crucial to OSA employees and the Grievant to have access to the criminal files in the Optiview database to perform their jobs. As a result of this incident, the Sheriff's Department terminated the Grievant's access to the Optiview database, as well as other confidential information otherwise available to OSA employees. During her time working with the Grievant, Giddens never saw anyone other than the Grievant sit at her desk and use the computer in her office, other than employees of the Department of Information Technology. During the July 15, 2019 meeting at Sterling's office, the Grievant emphatically denied ever accessing the Murphy file on the Optiview database. Giddens testified that at that time she was aware of the computer logs showing such access on May 31, 2019, and concluded the Grievant was lying. She believes the Grievant was insubordinate for leaving work on July 12, 2019 without attending the meeting with her and Sterling, and for lying to them about accessing the Murphy file. She believes the most egregious infraction was that the Grievant had lied about accessing the file.

Catherine Pratson ("Pratson") testified that she serves as the Director of the St. Mary's County Department of Human Resources. In that position, she is responsible for the application and interpretation of the Personnel Manual and the IT Policy. These policies and procedures are reviewed and enacted by the St. Mary's County Commissioners, and are amended from time to

Exhibit I

time. Employees are provided with the policies and procedures at the time of their initial employment, and current editions are made available through the Employer's computer portal to all employees. Pratson further testified that the Grievant had originally been hired at the OSA in 2012, but she did not know the Grievant prior to her suspension and termination. Pratson also testified that while progressive discipline for violations of the Personnel Manual and the IT Policy is generally applicable, in this instance the Grievant's unauthorized access to confidential criminal information without a valid business purpose, and then denying she had accessed the information, were sufficiently egregious that termination was warranted.

III. Motion to Dismiss

The Grievant was formally notified in writing on October 7, 2019 that she would be terminated on October 16, 2019. The grounds for the termination contained in the notice from the Director of Human Resources are clear and unambiguous. As provided in Section 3515(b)(2) of the Personnel Manual, the Grievant was provided with notice of the effective date of termination, the reasons for termination, and her appeal rights under the grievance procedures prescribed in Chapter 37 of the Manual. At the meeting on July 15, 2019 with Sterling and Giddens, she was asked whether she had accessed the Murphy case file and denied it. At the conclusion of the meeting, she received a written notice that she was suspended pending an investigation into whether she had "improperly provid[ed] confidential information from the State's Attorney's Office . . . ." The Grievant was also made aware during the meeting with Sterling and Giddens on July 15, 2019 that she was suspected of having unauthorized access to the Murphy case file and leaking the information, both of which she denied at that time, and subsequently denied to Sgt. Merritt during his pre-termination investigation. There is sufficient evidence that the Grievant had adequate pre-termination notice of the allegations against her for which she was eventually terminated. The Grievant's Motion for Leave to File Memorandum in Support of Her Deprivation of Due Process Claim is also denied as untimely, since any such request should have been made prior to the conclusion of the hearing on September 3, 2020.

IV. Decision

### A. Insubordination

The Board finds that the alleged insubordination by the Grievant for refusing to meet with OSA Chief of Staff Sterling on Friday, July 12, 2019, and which is cited as one of the reasons for her termination, should be considered as a separate infraction. This act by the Grievant is independent of the other grounds for her termination, and was resolved by the meeting on Monday, July 15, 2019. The Board finds that this allegation should have been addressed as a separate matter from the Grievant's termination, and should have resulted in a reprimand as part of the progressive discipline policy. The Board accordingly finds by a

Exhibit I

preponderance of the evidence that the Grievant was insubordinate in her refusal to meet with Sterling on July 12, 2019, and imposes a written reprimand for that action.

B. Violation of IT Policy

The Board finds that the record before it fails to demonstrate by a preponderance of the evidence that the Grievant violated the IT Policy by allegedly sharing her computer username and password, and this basis for termination is dismissed.

C. Access of Murphy Case File; Grievant's Denial; Database Access

The Board finds by a preponderance of the documentary evidence entered into the record and the testimony of the witnesses called by the Grievant and Employer, that (1) on May 31, 2019 the Grievant accessed the confidential information in the Murphy file from the Optiview database on the computer in her office without a valid business reason, in violation of the IT Policy, (2) the Grievant was not truthful in denying that she accessed the information, in violation of Chapter 15, Section 1516 of the Personnel Manual, and (3) as a result of the foregoing, the Grievant has been appropriately denied access to the Optiview criminal information database maintained by the Sheriff's Department, and is therefore unable to perform her duties with the OSA. Based on these findings, and giving due weight to the seriousness of these infractions, the Board affirms the Grievant's termination from employment.

V. Notice of Appeal Rights

As provided by Section 3711 of the Manual, the Grievant is hereby notified of her right to appeal the findings of the Grievance Review Board to the Commissioners of St. Mary's County.

Date: October 1, 2020

_Arthur Shepherd, Chair_  10/1/2020

_Jeannett Cudmore, Member_  10-1-2020

_Valerie Caswell, Member_  10/1/2020

_Donald Mills, Member_  10-1-2020

Exhibit I

_____ 10/1/20
Dana Digregorio, Member

**Exhibit I**