IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARBARA ANNETTE SMITH,                    *

     Plaintiff,                          *

v.                                        *          Civ. No. 8:20-cv-03785-PX

COMMISSIONERS OF ST. MARY'S               *
COUNTY, MARYLAND, *et al.*,
                                          *
     Defendants.

******

**MEMORANDUM OPINION**

Plaintiff Barbara Annette Smith ("Smith") brings this action against Defendants for

federal and state due process violations and breach of contract.  Now pending before the Court

are the motions to dismiss the Amended Complaint filed by Defendant Commissioners of St.

Mary's County ("the County") (ECF No. 19), and Defendant St. Mary's County Sheriff Timothy

K. Cameron ("the Sheriff") (ECF No. 17).  The Court has carefully reviewed the pleadings and

finds that no hearing is necessary.  *See* Loc. R. 105.6.  For the following reasons, the Court

GRANTS the motions and dismisses the Amended Complaint with prejudice.[1]

I.      **Background**

The Court accepts the facts as pleaded in the Amended Complaint as true and most

favorably to Smith.[2]  From October 2012 to October 2019, Smith worked for St. Mary's County,

with her last position as a senior legal assistant in the State's Attorney's Office.  ECF No. 14 ¶ 6.

Smith was considered a "merit employee," which meant that she could be terminated only for

---

[1] The Court also denies the County's motion to dismiss the original Complaint as moot (ECF No. 8), and grants Smith's motion to file excess pages (ECF No. 26).

[2] The Amended Complaint incorporates by reference all exhibits that were appended to the original Complaint.

"just cause." *Id.* ¶ 8.  Accordingly, before the County could fire Smith, it was obligated to provide her advance written notice of the grounds for termination and then afford her several levels of review where she could challenge those grounds.  *Id.*; ECF No. 1-5; ECF No. 1-11 at 3–7.

The County memorialized its termination procedures for merit employees in its Manual of Personnel Policies and Procedures ("Policy Manual" or "Manual").  ECF No. 1-5; ECF No. 1-11 at 3–7; ECF No. 19-2. [3]  According to the Policy Manual, before a merit employee may be terminated, she must receive from her supervisor "five working days advance written notice of the proposed termination," that states the reason for the termination, the effective date of the termination and her right to appeal the County's decision.  ECF No. 1-5 at 1.  The employee may next challenge her termination by filing an informal grievance with her immediate or next level supervisor, and the department director.  ECF No. 1-11 at 4.  If still dissatisfied, the employee may appeal any adverse determination to the County Grievance Review Board ("GRB").  ECF No. 1-5 at 1; ECF No. 1-11 at 5–7.  The employee is entitled to an evidentiary hearing before the GRB, where she may be assisted by counsel.  ECF No. 1-11 at 6–7.  The GRB may affirm, modify or reverse the underlying action, and must issue its decision in writing.  *Id.* at 7.  The employee may then appeal the GRB's decision to the County Commissioners, whose determination is final and binding.  *Id.*; ECF No. 1-5 at 1.

Although the Policy Manual sets forth the employee's procedural entitlements, the Manual also clearly advises that it does not amount to a binding contract between the County and

---

[3]  Smith appended to her Complaint only portions of the Policy Manual.  The Court will also consider as integral to the complaint the additional sections of the Policy Manual that the County submitted with its motion.  *See Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (quoting *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)) ("We may consider documents … attached to the motion to dismiss, so long as they are integral to the complaint and authentic"); *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013) (same).

the employee.  ECF No. 19-2 at 1–2.  The first page of the Policy Manual reads in bold as follows:

> **This manual is not intended to be and should not be construed as being a contract for employment under any terms or conditions. The provisions of this manual are expressions of current County policies and may be changed by the Commissioners of St. Mary's County in accordance with the procedures in paragraph 0106.**

*Id.* at 1; *see also id.* at 2 (reiterating that the Manual "represents the current personnel policies of St. Mary's County Government. These policies do not represent an employment contract, or any aspect of an employment contract, and should not be construed as such.").

Smith enjoyed a long and successful tenure with the State's Attorney's Office.  ECF No. 14 ¶¶ 6, 9.  That is, until the County learned that she may have abused her access to a criminal file database called "Optiview."  *Id.* ¶¶ 6–7.  "Optiview" allows authorized County employees to review sensitive records, including police reports, pertaining to criminal investigations.  *Id.*; ECF No. 1-9 at 4; ECF No. 1-10; ECF No. 1-13 at 2.  The Sheriff's Office administers Optiview and retains sole authority over who may access its contents.  ECF No. 1-10; ECF No. 1-13 at 2, 8.  Smith had been granted access to Optiview but only as related to her assisting designated prosecutors who worked largely on financial crimes.  ECF No. 1-9 at 5; ECF No. 1-13 at 2; ECF No. 14 ¶ 6; ECF No. 14-2 at 3.

On July 5, 2019, Deputy Sheriff Sgt. Robert Merritt was collecting a routine DNA sample from an assault suspect, Alex Murphy, when Murphy told Sgt. Merritt that he had learned details about his assault case from an "employee" in the Sheriff's Office.  ECF No. 1-9 at 4.  Murphy would not divulge the identity of his source.  *Id.*  Nonetheless, the Sheriff's Office of Professional Responsibility opened an investigation into the breach.  *Id.*

As part of the investigation, Sgt. Clayton Safford audited the Optiview database access history for County employees who had viewed Murphy's files. *Id.* The audit reflected that every employee who accessed the Murphy files had a legitimate reason for doing so, except for Smith. *Id.* at 5. Sgt. Safford later performed a more detailed audit regarding Smith's Optiview access for the preceding six months. *Id.* He determined that whoever was using Smith's login credentials spent twice as much time viewing the entirety of Murphy's files than any other file accessed under Smith's login credentials. *Id.*

Sgts. Safford and Merritt next relayed their findings to Buffy Giddens, head of the State's Attorney District Court Division. *Id.* In turn, Giddens, along with Deputy State's Attorney Jaymi Sterling, communicated to Smith that they wished to meet with her on July 12, 2019. ECF No. 14 ¶ 16. Smith informed Giddens and Sterling that she could not meet on that day because there had been a death in her family. *Id.* ¶ 30; ECF No. 1-13 at 3. The meeting took place instead on July 15, 2019. ECF No. 14 ¶ 16. At the meeting, Giddens and Sterling asked Smith why she accessed the Murphy files through Optiview. *Id.* ¶ 17. Smith said she did not know who Murphy was, denied any such access, and the meeting ended. *Id.* ¶¶ 17–18.

Immediately afterwards, however, the County suspended Smith with pay, providing her written notice that the suspension was issued on an "emergency basis" because of the "allegations suggesting [her] involvement in improperly providing confidential information from the State's Attorney's Office." *Id.* ¶ 18; ECF No. 1-6. The notice did not specifically identify Smith's alleged access to the Murphy files as grounds for the suspension, but it did state that Smith could face disciplinary action in accordance with the terms of the Policy Manual. ECF No. 1-6; ECF No. 14 ¶ 8.

On July 24, 2019, Sgt. Merritt interviewed Smith at her home about her alleged access to Murphy's files. ECF No. 1-9 at 8. Sgt. Merritt shared with Smith the specific results of the Optiview audit and that her supervisors saw no job-related need for her to have accessed Murphy's files. *Id.* Smith reiterated to Sgt. Merritt that she did not access the files and denied knowing Murphy or anyone else involved in his assault charge. *Id.*

The Sheriff's investigation produced no additional evidence that Smith had any connection to Murphy or the case, apart from the computer audit results. *Id.* at 10–11. Although the Sheriff's investigation concluded without any criminal charges filed against Smith, the Sheriff revoked Smith's access to Optiview as of August 5, 2019. *Id.*; ECF No. 1-10.

Smith did not learn that the Sheriff had pulled her Optiview access until September 27, 2019, when she, along with her counsel, met with several county officials. ECF No. 14 ¶ 23. At this meeting, Smith was asked why she failed to meet with Giddens and Sterling on July 12, and where she kept her computer passwords. *Id.* ¶ 30. Smith answered these questions. *Id.* They also evidently discussed certain "computer evidence," but had not shared with Smith any documents related to such evidence. *Id.* ¶ 31.

Smith next heard from the County on October 7, 2019. *Id.* ¶ 33. The County's Human Resources Department issued Smith a "written notice of termination" to take effect October 16, 2019. ECF 1-11. The notice specifically enumerated the grounds for her termination and the evidence supporting each ground, including Smith's responses to the same. *Id.* at 1–2. The notice reads in relevant part:

> The reason for the termination is for violations of the St. Mary's County Manual of Personnel Policies and Procedures including:
>
> As stated in Chapter 35, Table 35-1, your refusal to speak with Chief of Staff Jaymi Sterling on Friday July 12, 2019 is, "Insubordination to supervisor, refusal to perform supervisor's assignments, or

direction, abusive or threatening language at any County supervisor, employee official or member of the public."

As stated in Chapter 15, Section 1516, theft, lying, omissions, misrepresentations, falsification of County records are all prohibited behaviors. You state that you did not access the Alex Murphy case file. IT evidence shows that the case file was accessed from your personal computer, in your office using your username and password from 13:17 to 13:58 on the afternoon of May 31, 2019.

You state that your network username and password was [sic] posted on your computer monitor. The St. Mary's County Government IT Use and Security Policy states: "Users must be responsible for all activity performed with their personal user ID's. They must not permit others to perform any activity with their user ID's."

You acknowledge that there was no business reason or necessity to access the Alex Murphy case files. According to the IT Use and Security Policy, "Incidental personal use of the St. Mary's County information system is permissible if the use does not consume more than a trivial amount of resources that could otherwise be used for business purposes, permissible incidental use is described as sending an email message to schedule a luncheon."

*Id.* The notice concluded by advising Smith of her right to appeal the termination decision. *Id.* at 2–7.

Smith availed herself of every level of review. ECF No. 14 ¶¶ 36–68. In her informal grievance, Smith asked that she be reinstated with back pay or alternatively, receive a sanction short of termination. *Id.* ¶ 36. Both the State's Attorney and County Director of Human Resources denied Smith's requested relief and left her termination in place. *Id.* ¶ 37.

Smith next appealed the matter to the GRB. *Id.* ¶ 38. In preparation for an evidentiary hearing, the Deputy County Attorney and Smith's counsel disagreed about the appropriate burden of proof. *Id.* ¶¶ 13–14. The County took the position Smith bore the burden of showing that the County lacked justification in her termination. *Id.* Smith, on the other hand, argued that

the County must demonstrate the propriety of termination by a preponderance of the evidence. *Id.* ¶¶ 14, 83–84, 91–92.

In early September 2020, the GRB conducted a two-day hearing during which several witnesses testified. *Id.* ¶ 38; ECF No. 1-13 at 3–7; ECF No. 14-2. Smith challenged the termination decision on the merits. ECF No. 14 ¶ 38. She also pressed that because the County provided no pre-termination notice of the charges placed against her or any opportunity to respond, she should be reinstated to her former position. *Id.*

The GRB affirmed Smith's termination on October 1, 2020 in a nine-page letter decision. ECF No. 1-13. The GRB concluded that "by a preponderance of the documentary evidence entered into the record and the testimony of the witnesses," Smith had accessed Murphy's Optiview file without a "valid business reason, in violation of the IT Policy"; that she lied about such access to her supervisors; and that the justifiable revocation of her Optiview access rendered her unable to perform her job duties at the State's Attorney's Office. *Id.* at 8. In her favor, the GRB found that Smith had not violated the County IT Policy in posting her username and password on her computer monitor, and the failure to meet with her supervisors on July 12 should have been resolved by reprimand only. *Id.* at 7–8. Smith appealed the GRB's decision to the Commissioners of St. Mary's County, who affirmed the decision on October 27, 2020. ECF No. 14 ¶ 68; ECF No. 1-14.

Smith next filed her Complaint in this Court against the County and Sheriff, alleging a violation of her procedural due process rights for failure to provide adequate pre-termination notice and for departing from its own disciplinary procedures. ECF No. 1. The County moved to dismiss the Complaint. ECF No. 8. In response, Smith filed an Amended Complaint. ECF No. 14.

The Amended Complaint adds common law contract claims against the County and due process claims against the Sheriff arising from the denial of Smith's access to Optiview, and clarifies Smith's post-termination due process allegations. *Id.* In **Counts I and II**, Smith avers that the County denied her procedural due process in failing to provide her pre-termination notice of the charges or evidence obtained and an opportunity to respond. *Id.* at 14–16. In **Counts III and IV,** Smith alleges that the County denied her adequate process by shifting to her the burden of proof in the post-termination hearing and by failing to find her culpable under a preponderance of the evidence standard. *Id.* at 17–19. In **Counts IX and X**, Smith maintains that the Sheriff revoked her access to Optiview without due process, and in **Counts VII and VIII**, that her termination arising from that revocation violated her due process rights. *Id.* at 22–27. As to the breach of contract claims, **Counts V and VI**, Smith avers that the Policy Manual constitutes a binding and enforceable contract that had been breached when the County violated the procedural protections afforded to Smith per the Manual's terms. *Id.* at 20–22.

The Defendants urge the Court to dismiss the Amended Complaint, arguing that each claim fails as a matter of law. ECF Nos. 17 & 19. For the reasons that follow, the Court must agree.

## II.     Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). A complaint need only satisfy the standard of Rule 8(a), requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Complaint must make some factual

showing, "rather than a blanket assertion[] of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The Complaint must include facts that render the plaintiff's claims facially plausible or permit the reasonable inference that the defendant is liable for the alleged violations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court considers all exhibits attached to the Complaint as part of the well-pleaded allegations. *See Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 608 (D. Md. 2016) ("[E]xhibits attached to the Complaint are treated as incorporated therein.").

### III.    Discussion

The Court first reviews the sufficiency of the due process claims and next turns to the breach of contract allegations.

### A.    Due Process Challenges to the County Termination Procedures

The Due Process clauses of the Fifth and Fourteenth Amendments guarantee that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V; U.S. Const. amend. XIV. Article 24 of the Maryland Declaration of Rights similarly provides that "no man ought to be … deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. art. 24. Because Article 24 is typically interpreted *in pari materia* with its federal counterpart, the Court will assess the

sufficiency of the state and federal due process allegations together.  *See Dep't of Transp., Motor Vehicle Admin. v. Armacost*, 299 Md. 392, 415–16 (Md. 1984) (stating that due process clauses of Article 24 and Fourteenth Amendment have same meaning and Supreme Court interpretations of the federal provision are authority for Article 24); *City of Annapolis v. Rowe*, 123 Md. App. 267, 270 (1998) (citing *Pitsenberger v. Pitsenberger*, 287 Md. 20, 27 (1980)) (stating that Article 24 and Fourteenth Amendment both protect due process rights and Article 24 is construed *in pari materia* with federal Due Process Clause).

To survive dismissal, a due process allegation must plausibly aver that the plaintiff maintains "(1) a cognizable liberty or property interest; (2) [that she suffered] deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate."  *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (quoting *Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011)).  The County agrees that Smith possessed a constitutionally sufficient property interest in her employment and that the County deprived her of that property interest when it terminated her.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985).  The parties, however, hotly dispute the sufficiency of the third element, whether Smith was accorded the "root requirement" of adequate process in connection with her termination.  *Id.* at 542 (citing *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).  Smith challenges as inadequate the County's pre- and post- termination procedures.  The Court considers each separately.

### 1.    Counts I & II:  Pre-termination Process

In Counts I and II, Smith contends that the County denied her constitutionally adequate pre-termination notice in violation of her right to due process.  It is well settled that where an employee maintains a protected interest in her employment, she must be afforded, *before*

termination, "[1] oral or written notice of the charges against [her], [2] an explanation of the employer's evidence, and [3] an opportunity to present [her] side of the story." *McMillan v. Cumberland Cnty. Bd. of Educ.*, 734 F. App'x 836, 841 (4th Cir. 2018) (quoting *Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1463 (4th Cir. 1990)).  Although the employee is entitled to "some form of pretermination hearing," it "need not be elaborate."  *Riccio*, 907 F.2d at 1463 (citing *Loudermill*, 470 U.S. at 542, 545).  This is so because pre-termination notice "functions only as 'an initial check against mistaken decisions' to determine whether the grounds for the action are true and 'support the proposed action.'" *Linton v. Frederick Cnty. Bd. of Cnty. Comm'rs,* 964 F.2d 1436, 1439 (4th Cir. 1992) (quoting *Loudermill*, 470 U.S. at 545–46).  Pre-termination procedures are sufficient if the employee is given advance explanation of the conduct giving rise to her dismissal and a chance to respond. *Id.* at 1440.  These procedures, however, need not "resolve the propriety of the discharge." *Id.* (quoting *Loudermill*, 470 U.S. at 545).

When viewing the Complaint facts most favorably to Smith, the County afforded her adequate process such that she knew the conduct for which the County sought her termination and could "tell her side of the story." *Riccio*, 907 F. 2d at 1463.   At the outset, the Court notes that the formal notice of termination, issued to Smith on October 7, 2019, comports with the County's own advance notice provisions set out in the Policy Manual.  ECF Nos. 1-5 & 1-11.  The notice stated clearly that Smith's effective date of termination would be nine days later, on October 16, 2019.  ECF No. 1-11 at 1.  It also stated plainly the reasons for Smith's termination and the evidence in support. *Id.* at 1–2.  Lastly, it detailed Smith's appellate rights. *Id.* at 2–7. Accordingly, Smith had been afforded sufficient pre-termination notice of the conduct

underlying the County's decision to terminate her, and nine days advance warning before her termination took effect.

That said, the County does not argue that this notice alone satisfies due process, and perhaps for good reason. Reading the letter most favorably to Smith, it presents her termination as a foregone conclusion, announcing that as of "5 p.m. October 16, 2019, . . . . your employment with St. Mary's County Government *shall terminate*." *Id.* at 1 (emphasis added). The notice also states that while Smith may "appeal this decision" pursuant to the Policy Manual terms, it provides no avenue for Smith to challenge the allegations in advance of her termination. *Id* at 2. Thus, when viewing the October 7 notice most favorably to Smith, it alone cannot satisfy Smith's constitutional right to pre-termination process.

But as the County aptly points out, Smith was accorded notice and several opportunities to be heard prior to receiving the October 7 letter. On July 15, Smith first learned that the County believed she misused her access to Optiview. ECF No. 14 ¶¶ 16–17. State's Attorney supervisors Sterling and Giddens asked Smith point blank "whether she had a reason to access" the Murphy files via Optiview. *Id.* Smith also understood the nature of the allegations such that she could respond—she said she had "no idea" who Murphy was and that she did not access his file. *Id.* In the same meeting, she was also immediately informed that she would be suspended with pay because she "improperly provid[ed] confidential information" to others while working in the State's Attorney's office. *Id.* ¶ 18; ECF No. 1-6. The written suspension notice further apprised Smith that an investigation would begin, and that depending on the results, she could face eventual disciplinary action, including termination, as set forth in the Policy Manual. ECF No. 1-6. Accordingly, this meeting, while brief, placed Smith on notice that her employer believed she had improperly accessed confidential information in the Murphy files through

Optiview and gave Smith an opportunity to comment on both the employer's charge and supporting evidence.

Nor can Smith deny having learned more detail about these allegations when she met with Sgt. Merritt shortly after her suspension. Sgt. Merritt told Smith that Murphy's Optiview files had been accessed using Smith's credentials and password, and that, according to her supervisors, she had no legitimate job-related reason to have looked at the records of an assault suspect. ECF No. 1-9 at 8. Although, strictly speaking, Sgt. Merritt's interview concerned potential criminal charges, it nonetheless afforded her critical "context" pertinent to the County's reasons for wanting to fire her. *Linton*, 964 F.2d at 1440 (assessing adequacy of pre-termination notice in light of "historical context" of plaintiff's claims); *Riccio*, 907 F.2d at 1465 (finding sufficient notice given to employee "over the course" of various meetings between employee and investigator).

Smith next met with an array of County representatives on September 27, who asked her why she did not meet with Giddens and Sterling on July 12, and so she knew from that question that her failure to meet was cause for the County's concern. ECF No. 14 ¶ 30. At that same meeting, Smith learned that the Sheriff had revoked her Optiview access, and consequently, that she could no longer perform related job duties. *Id.* ¶ 23. Smith was also asked about where she kept her computer password; and even though Smith was not supplied with any "documentation" supporting her alleged computer malfeasance, she does not deny that "computer evidence was discussed." *Id.* ¶¶ 30–31; *cf. Gilbert v. Homar*, 520 U.S. 924, 929 (1997) (noting pre-termination process need only include *explanation* of employer's evidence). The meeting, therefore, alerted Smith to the conduct undergirding the County's allegations and gave her an adequate opportunity to respond. Indeed, as her written notice of termination reflects, by October 7, Smith had already

"told her side of the story" as to each of the allegations leveled against her. ECF No. 1-11 ("You state that you did not access the Alex Murphy case file," where IT evidence shows otherwise; "[y]ou state that your network user name and password was posted on your computer monitor," where IT policy places the responsibility on employee for all activity performed using such credentials; "[y]ou acknowledge that there was no business reason or necessity to access the Alex Murphy case files" despite evidence that Smith reviewed all 95 records in the Murphy file). Thus, the facts as viewed most favorably to Smith demonstrate that prior to her termination, she knew the "conduct giving rise to the dismissal" such that she could "make a response." *Linton*, 964 F.2d at 1440. The County's pre-termination notice satisfied procedural due process. Counts I and II must be dismissed.

### 2.      Counts III & IV: Adequacy of the GRB Hearing

Next, Smith alleges that the County violated her due process rights by improperly placing the burden of proof on her to show that her termination was unjustified. ECF No. 14 at 17–19. Smith also claims the County failed to establish, by a preponderance of the evidence, that Smith engaged in the misconduct underlying the basis for her termination. *Id.*

The Court begins by clarifying the applicable law. Smith points to no authority that requires the County to prove Smith's culpability by a preponderance of the evidence. Rather, it is well settled that "[a] pretermination opportunity to respond, coupled with posttermination administrative procedures provides all the process that is due." *Holland v. Rimmer,* 25 F.3d 1251, 1258 (4th Cir. 1994) (quoting *Loudermill*, 470 U.S. at 547–48) (internal quotations omitted); *see also Jordan v. Prince William Cnty.*, No. LO-08-0089, 2008 WL 4546601, at *5 (E.D. Va. Oct. 8, 2008), *aff'd*, 326 F. App'x 243 (4th Cir. 2009) ("[T]his Court is unaware of any due process requirement that the employer bear the burden of proof in post-termination

proceedings."). Because Smith's due process claim rests on the faulty assumption that the County must carry its burden by preponderant evidence, the Court is left with no choice but to find the claim fails as a matter of law.

But even if Smith was entitled to a finding of culpability by preponderant evidence, she received just that. ECF No. 1-13 at 7–8. The GRB expressly stated that it made the relevant factual findings "by a preponderance of the evidence" and based on this evidence, concluded that her termination was well supported. *Id.* This Court cannot, as Smith seems to suggest, look behind the GRB's findings to reweigh the evidence on which the GRB relied. A due process claim concerns the constitutional adequacy of the *process* that the County made available to Smith; it does not allow this Court to wade into the merits of the GRB's decision. *See Mua v. Md. Off. of Att'y Gen.*, Nos. PJM-14-2070, PJM-14-2334, PJM-15-2249, 2016 WL 1258469, at *10 (D. Md. Mar. 31, 2016) (refusing to address "merits" rather than "process" in due process claim challenging state board of education's termination review); *Detweiler v. Va. Dept. of Rehab. Servs.*, 705 F.2d 557, 560–61 (4th Cir. 1983) (holding that where grievance procedure allowed terminated public employee to present, examine and cross-examine witnesses with assistance of counsel and required decision-making panel to explain reasons for its ruling in writing, procedural due process requirements were met).

As to the process that Smith received, it was constitutionally adequate. Smith was afforded a two-day post-termination hearing at which she presented evidence and was given the opportunity, through counsel, to examine and cross-examine witnesses. ECF No. 1-13 at 3–7. Further, the GRB issued a written decision which Smith challenged before the Commissioners. ECF No. 14 ¶¶ 66–68; ECF No. 1-13; ECF No. 1-14. Although Smith likely viewed the

experience as far from perfect, she presents no facts to suggest it was so deficient as to deprive her of due process.  Counts III and IV, therefore, fail as a matter of law.

### B.      Counts IX and X: Due Process Claims as to Revocation of Optiview

Smith separately challenges the Sheriff's revocation of her Optiview access as a procedural due process violation.  ECF No. 14 at 25–27.  This claim, too, fails, but for a different reason.  Smith recognizes that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972).  As such, she must plausibly aver that she maintained either a liberty or property interest in her access to Optiview.

No Complaint facts make plausible that Smith maintained a liberty interest in Optiview, despite Smith's assertions to the contrary.  ECF No. 25 at 16–17; ECF No. 27 at 36–37.[4]  To make plausible that she maintained a property interest, Smith must allege some facts that show she has "more than an abstract need or desire for," or a "unilateral expectation" of, maintaining the claimed property interest.  *Roth*, 408 U.S. 564 at 577.  Rather, she must demonstrate "a legitimate claim of entitlement to" an interest that, for example, derives from some "independent source such as state law" or "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id.*; *see also Higginbotham v. Pub. Serv. Comm'n of*

---

[4] Smith provides no cogent argument as to how her access to Optiview amounts to a protected liberty interest.  ECF No. 25 at 16-17; *cf. Jamil v. Sec'y, Dep't of Def.*, 910 F.2d 1203, 1209 (4th Cir. 1990).  At best, Smith seems to suggest that she maintains a liberty interest in her "good name and reputation" which had been damaged when she was "terminated for allegedly lying" about her impermissible use of Optiview.  ECF No. 25 at 17.  On this, the Court need not dive into Smith's new theory of protected interests.  Even assuming that she had been deprived a protected liberty interest through her termination, she had been given adequate process in connection with that deprivation.  *See supra* pp. 10–14.  For the same reason, the Court views Smith's request to amend her Optiview-related claims again to incorporate the claimed "liberty interest" as futile.  *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir 2008).

*Md.*, 171 Md. App. 254, 267 (2006) (quoting *Samuels v. Tschechtelin*, 135 Md. App. 483, 524 (2000)).

Pertinent to this claim, the Fourth Circuit's decision in *Jamil v. Secretary, Department of Defense*, 910 F.2d 1203, 1209 (4th Cir. 1990), is instructive. There, a federal employee alleged that the unilateral revocation of his security clearance violated procedural due process. *Id.* In affirming summary judgment in favor of the government employer, the Court concluded that the plaintiff lacked any property or liberty interest in the security clearance itself. *Id.* The Court reasoned that "because of the inherently discretionary judgment required in the decisionmaking process, 'no one has a 'right' to a security clearance' and revocation does not constitute an adjudication of one's character." *Id.* (quoting *Dept. of the Navy v. Egan*, 484 U.S. 518, 528 (1988)).

Authorization to access Optiview presents no material difference than the authorization at issue in *Jamil*. As with a security clearance, Smith's use of Optiview arises from the Sheriff's discretionary decision to allow certain qualified individuals access to sensitive, confidential information. *Cf. Doe v. Cheney*, 885 F.2d 898, 909–10 (D.C. Cir. 1989) (NSA employee did not have property or liberty interest in access to sensitive information); *Holland v. Baca*, No. JC-10-8129, 2011 WL 13217676, at *4 (C.D. Cal. May 17, 2011) (security guard did not have property interest in county security clearance). Likewise, the revocation of such access reflects, once again, the Sheriff's exercising his discretion because in his view, Smith's misconduct "compromise[d] our integrity and public safety." ECF No. 1-10. These facts, construed most favorably to Smith, do not make plausible that Smith enjoyed a protected property interest in her access to Optiview. Counts IX and X, therefore, must be dismissed.[5]

---

[5] The Sheriff also maintains that he is immune from suit pursuant to the Eleventh Amendment to the Constitution, *see Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 746 (4th Cir. 2018), and that he likewise enjoys

### C.     Counts VII & VIII: Claims Against the County Based on Revocation of Optiview Access

As a corollary of her claims against the Sheriff, Smith alleges that denial of Optiview access constitutes a due process violation as to the County.  Smith maintains that because her Optiview access had been revoked summarily, her termination was likewise a foregone conclusion.  Thus, says Smith, the post-termination proceedings did not offer a meaningful opportunity for her to secure "full remedial relief" even if she had successfully rebutted the misconduct charges.  ECF No. 14 ¶¶ 112–13; ECF No. 27 at 31–32.  Again, this liability theory is foreclosed under *Jamil.*  The Fourth Circuit squarely held that even where the revocation of a security clearance rendered termination inevitable, this did not mean the post-termination process was constitutionally inadequate.  *See Jamil*, 910 F.2d at 1208.  Where the government employer in *Jamil* made clear that the grounds for termination rested on the "lack of a clearance," and gave the employee an opportunity to respond, the procedure itself was sufficient even if the plaintiff disagreed with the decision.  *Id.*  Here, Smith avers no facts to make plausible that she was denied proper notice of the conduct forming the basis of the employer's claims—including revocation of her access to Optiview—or was denied the opportunity to respond.  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'").  Thus, Smith's procedural due process claims under Counts VII and VII fail as a matter of law.

### D.     Counts V & VI: Breach of Contract Claims

---

sovereign immunity.  *See Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (invoking the Maryland Tort Claims Act as setting forth the terms of such state consent to be sued).  These immunity theories are distinct, yet the Sheriff appears to invoke them interchangeably.  ECF No. 17 at 8.  Because the claims fail for other reasons, the Court declines to reach the question of "immunity" as the Sheriff frames it.

Lastly, the Court turns to Smith's breach of contract claims.  In Count V, Smith avers that the County's failure to demonstrate that Smith committed the alleged infractions by preponderant evidence constitutes a breach of the contractual terms set forth in the Policy Manual.  ECF No. 14 ¶¶ 97–103.  In Count VI, Smith avers that the County breached its contractual obligations when it terminated Smith without considering a lesser sanction as described in the Policy Manual.  *Id.* ¶¶ 104–08.  Smith's claims rest on the legal premise that the Policy Manual constitutes an enforceable contract between her and the County.  *Id.* ¶ 10.  Because the Policy Manual, by its terms, is not a binding contract, these claims, too, fail as a matter of law.

Fundamental to the success of a contract claim is the existence of a legally enforceable agreement.  Although an employer's stated limitations on termination for cause can constitute binding obligations on which an employee may justifiably rely, "[n]ot every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant . . . . 'General statements of policy are no more than that and do not meet the contractual requirements of an offer.'"  *Bagwell v. Peninsula Reg'l Med. Ctr.,* 106 Md. App. 470, 493 (1995) (quoting *Staggs v. Blue Cross of Md., Inc.*, 61 Md. App. 381, 392 (1985)).  This is so because an employer may negate any such justifiable reliance on the part of the employee by clearly stating that the Manual's terms are mere "policy" and not binding contractual terms.  *Id.* (quoting *Castiglione v. Johns Hopkins Hosp.*, 69 Md. App. 325, 339–41 (1986)); *see also Signoriello v. Motiva Co*., No. MJG-11-3077, 2012 WL 2577496, at *4 (D. Md. July 3, 2012); *Castiglione*, 69 Md. App. at 340 ("[A]n employer may avoid contractual liability by any terms which clearly and conspicuously disclaim contractual intent.").

Here, the Policy Manual could not be clearer.  The cover page states, in boldface type: "**this Manual is not intended to be, and should not be construed as being a contract for**

**employment under any terms or conditions**."  ECF No. 19-2 at 1.  And under the heading

"Policy," the Manual reiterates that it sets forth "the current personnel policies of St. Mary's

County Government.  They do not represent an employment contract, or any aspect of an

employment contract, and should not be construed as such." *Id.* at 2.  The clear and

unambiguous disclaimers negate any purported reliance on the Manual as a binding contract.

For this reason, the contract claims fail as a matter of law.[6]

> ### E.     Dismissal with or without prejudice

Whether to dismiss claims with or without prejudice remains well within the district

court's discretion.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (citing

*180S, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)); *Carter v.*

*Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985).  Generally, when a plaintiff has

not been afforded an opportunity to amend the complaint, dismissal should be without prejudice.

*Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013).  However, if amendment to the pleadings

would be futile, dismissal with prejudice is warranted.  *See Cozzarelli v. Inspire Pharms., Inc.*,

549 F.3d 618, 630 (4th Cir. 2008) (finding district court did not abuse discretion in dismissing

complaint with prejudice where "amendment would be futile in light of the fundamental

deficiencies in plaintiffs' theory of liability"); *McLean v. United States*, 566 F.3d 391, 401 (4th

Cir. 2009) ("Once a court has determined that the complaint is truly unamendable, a dismissal

without prejudice is of little benefit to the litigant, as the claim cannot be made viable through

reformulation.").

---

[6] Alternatively, even if the Policy Manual amounted to an enforceable contract, the complaint facts fail to make plausible that the County "breached" any of its terms.  The complaint facts viewed most favorably to Smith demonstrate that the GRB adopted a preponderant evidence standard, *see supra* pp. 14–15, and that the GRB was under no obligation to consider sanctions short of termination.  ECF No. 1-11 at 7.

Notably here, the County had moved to dismiss Smith's pre-termination due process claims in the original Complaint on nearly identical grounds.  ECF No. 8.  Smith amended her Complaint in response, but failed to cure any of the identified deficiencies.  At this juncture, the Court cannot conceive of any additional facts that would save the claims.  As for the post-termination allegations new to the Amended Complaint, the entire administrative record was incorporated into the pleading.  ECF Nos. 1-5 through 1-14; ECF No. 14-2.  So the Court cannot fathom what additional facts could be added to shore up the claims.  Likewise, the breach of contract claims fail in light of the unambiguous disclaimer in the Policy Manual, a fact which will not change if Smith is granted yet a second opportunity to amend the complaint.  ECF No. 19-2.  Lastly, the Optiview-related claims are also "unamendable" because no additional facts could transform access to Optiview into a protected liberty or property interest.  *McLean*, 566 F.3d at 401; *Weigel*, 950 F. Supp. 2d at 826.  Thus, the Amended Complaint must be dismissed entirely with prejudice.

**IV.     Conclusion**

For the foregoing reasons, the County's motion to dismiss the original complaint (ECF No. 8) is denied as moot.  Smith's motion to file excess pages (ECF No. 26) is granted.  The motions to dismiss the Amended Complaint (ECF No. 17 & ECF No. 19) are both granted, and all claims are dismissed with prejudice.  A separate order follows.

 7/27/2021                                                           /s/
Date                                                          Paula Xinis
                                                              United States District Judge